IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MICHAEL FANNING, et al.,

        Plaintiffs,

v.                                                  CIVIL ACTION NO. 2:18-cv-01183

THE JOHN A. SHEPPARD MEMORIAL
ECOLOGICAL RESERVATION, INC., et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

I.    Introduction

Pending before the court is the plaintiffs' Motion to Disqualify Defendants' Counsel [ECF No. 21]. The defendants filed a response [ECF No. 23], and the plaintiffs filed a reply [ECF No. 27]. The Motion is now ripe for adjudication. For the following reasons, the Motion is **GRANTED**.

II.    Background

Defendant John A. Sheppard Memorial Ecological Reservation, Inc. ("JASMER") is a non-profit corporation that was formed in 1976. The plaintiffs are elected members of the JASMER board of directors and have allegedly brought this case to protect the interests of JASMER against wrongful corporate acts committed by several of the individual defendants, who are purported members of JASMER's board of directors. The plaintiffs also brought this action against Defendant Big

Laurel Learning Center, Inc. ("Big Laurel"), an entity that has allegedly received an unfair benefit from a lease with JASMER. The law firm of Stanley & Schmitt ("Counsel") has assumed joint representation of all of the named defendants in the case: JASMER, JASMER's individual board members, and Big Laurel.

The plaintiffs bring their Motion to Disqualify pursuant to Rules 1.7 and 1.13 of the West Virginia Rules of Professional Conduct. The plaintiffs contend that Counsel's concurrent representation of JASMER and JASMER's individual board members named as defendants creates a non-consentable conflict of interest. The plaintiffs argue that Counsel's joint representation of JASMER and Big Laurel likewise involves a non-consentable conflict of interest. The plaintiffs argue further that even if Counsel's joint representation is consentable, the defendants have not provided the requisite informed, written consent to the representation. Accordingly, the plaintiffs argue that Counsel should be disqualified from any further representation of the defendants in this case.

III. Discussion

### a. Applicable Law

Rule 83.7 of this district's Local Rules of Procedure states that, in all actions and proceedings in this court, "attorneys shall conduct themselves in accordance with the Rules of Professional Conduct and the Standards of Professional Conduct promulgated and adopted by the Supreme Court of Appeals of West Virginia, and the Model Rules of Professional Conduct published by the American Bar Association."

2

West Virginia Rule of Professional Conduct 1.7 addresses conflicts of interests with respect to current clients. Rule 1.7 states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>
>> (2) the representation is not prohibited by law;
>>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>>
>> (4) each affected client gives informed consent, confirmed in writing.

With respect to the organization as a client, Rule 1.13(f) provides that a lawyer representing an organization "may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of

Rule 1.7." Under Rule 1.13(f), when the organization's consent is required by Rule 1.7, "the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders."

A court may disqualify a lawyer from a case "because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice." *Garlow v. Zakaib*, 413 S.E.2d 112, 117 (W. Va. 1991). While I view motions to disqualify counsel with extreme caution because of their potential for harassment, "disqualification is required when representation of a client will violate the Rules of Professional Conduct or other law." *HealthNet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 758 (S.D. W. Va. 2003) (Goodwin, J.) (citing W. Va. R. Prof'l Conduct 1.16(a)(1)). The trial court need not weigh the circumstances in determining whether to disqualify counsel for a conflict of interest "with hair-splitting nicety," but the court should "resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977).

The plaintiff alleges that two impermissible conflicts of interest exist. I will address each alleged conflict in turn.

### b. Representation of JASMER and the Board Members

First, the plaintiffs assert that Counsel's joint representation of JASMER and JASMER's individual board members ("Board Members") creates a non-consentable conflict of interest in violation of Rules 1.7 and 1.13. The plaintiffs also contend that

4

JASMER has not provided informed, written consent to the alleged conflict as required by Rules 1.7 and 1.13.

As an initial matter, the court finds that there is a significant risk that Counsel's representation of both JASMER and the Board Members will be materially limited by Counsel's responsibilities to each client, triggering the requirements of Rules 1.7(b) and 1.13(f). The plaintiffs' Complaint alleges that, acting as directors, the Board Members engaged in conduct directly harmful to the corporate interests of JASMER in violation of their fiduciary duties. The plaintiffs allege, inter alia, that the Board Members failed to preserve JASMER's 501(c)(3) status, allowed the net earnings of JASMER to inure to their own benefit, and approved a lease with Big Laurel that is burdensome to JASMER. In short, the Complaint's numerous allegations of wrongdoing pit the Board Members and JASMER against one another. Comment 14 to Rule 1.13 acknowledges such representation may create a conflict of interest: "[I]f the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board."[1] Nevertheless, pursuant to Rules 1.7 and 1.13, Counsel can represent both JASMER and the Board Members if two requirements are met: Counsel must (1) reasonably believe that it can provide competent and diligent representation to each affected client and (2) obtain informed consent, confirmed in writing, from each affected client.

---

[1] Comment 14 to Rule 1.13 describes conflicts in derivative actions, but the recognition of a conflict between an organization's board and the organization itself is equally applicable here.

The court need not address whether Counsel's belief that it can competently and diligently represent both clients is reasonable, as Counsel has failed to properly obtain JASMER's informed, written consent to the joint representation. When a lawyer represents both an organization and its directors and Rule 1.7 requires the organization's consent, "the consent shall be given by an appropriate official of the organization *other* than the individual who is to be represented, or by the shareholders." (emphasis added). W. Va. R. Prof'l Conduct 1.13(f).

The defendants stated in their Response that each defendant provided informed, written consent to the joint representation through language in their respective signed engagement agreements. On October 16, 2018, the court ordered the defendants to file under seal their respective engagement agreements for in camera inspection. Having reviewed the defendants' engagement agreements, I find that JASMER has failed to provide informed, written consent to the conflict as required by the Rules of Professional Conduct.

First, JASMER's engagement agreement fails to mention the conflict of interest resulting from Counsel's joint representation of JASMER and several of the Board Members. Comment 18 to Rule 1.7 states that informed consent "requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client." Comment 18 to Rule 1.7 further explains that "[w]hen representation of multiple clients in a single matter is undertaken, the information

6

*must* include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved." (emphasis added); *see also* W. Va. R. Prof'l Conduct 1.0(e) (informed consent "denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct"). Counsel failed to disclose in JASMER's engagement agreement the conflict arising from its joint representation of JASMER and several of the Board Members. Therefore, the court finds that JASMER did not provide informed consent to the conflict in its engagement agreement.

JASMER's purported consent to the conflict is also deficient under Rule 1.13(f). JASMER's engagement agreement was signed only by a Board Member represented by defense Counsel. When a lawyer represents both an organization and its directors, Rule 1.13(f) requires consent to be given by an official of the organization *other* than the individual who is to be represented.

Nor do the defendants argue that JASMER's shareholders have consented to the conflict. To the contrary, the defendants acknowledge JASMER's lack of consent to the joint representation. The defendants noted in their Response that "to ensure that JASMER's consent is valid and properly given," JASMER intends to notice a special meeting at which JASMER's membership will vote on whether to approve the

7

joint representation.[2] But the duty to procure informed consent cannot be satisfied after the fact. Comment 3 to Rule 1.7 states: "A conflict of interest may exist before representation is undertaken, in which event the representation *must* be declined, *unless* the lawyer obtains the informed consent of each client under the conditions of paragraph (b)." (emphasis added). The conflict between JASMER and the Board Members existed before the joint representation was undertaken, given that the conflict is apparent from the allegations in the plaintiffs' Complaint. Even if the conflict somehow arose *after* the representation began, Comment 4 to Rule 1.7 requires the lawyer to withdraw from the representation "*unless* the lawyer has obtained the informed consent of the client under the conditions of paragraph (b)." (emphasis added). Here, despite the existence of a conflict between JASMER and the Board Members, Counsel filed pleadings and documents on behalf of JASMER and the other defendants without having obtained JASMER's informed consent. Per Rule 1.7, JASMER's consent to the conflict cannot be procured at a special meeting months after the conflict came into existence (or months after Counsel filed pleadings and documents on the defendants' behalf).

      No evidence in the record suggests that Counsel properly obtained JASMER's informed, written consent to the joint representation of the Board Members. For this reason, Counsel cannot represent either JASMER or the Board Members named as

---

[2] On October 23, 2018, the defendants filed an exhibit titled "Notice of a Combined Special Meeting of the Members and the Board of Trustees," which states that JASMER will hold a special meeting on November 3, 2018 to provide members the opportunity to authorize the joint representation.

8

defendants, regardless of whether the Board Members appropriately consented to the conflict. *See* W. Va. R. Prof'l Conduct 1.7(b)(4) (requiring "*each* affected client" to give informed consent, confirmed in writing for a lawyer to represent a client notwithstanding a concurrent conflict of interest) (emphasis added). Because the court finds that Counsel's joint representation of JASMER and the Board Members violates the Rules of Professional Conduct, disqualification is required.

### c. Representation of JASMER and Big Laurel

The plaintiffs contend that Counsel's joint representation of JASMER and Big Laurel likewise involves a non-consentable conflict of interest. Additionally, the plaintiffs assert that JASMER has not given informed, written consent to the joint representation as required by the Rules of Professional Conduct.

First, I find that there is a significant risk that Counsel's representation of both JASMER and Big Laurel will be materially limited by Counsel's responsibilities to each client, triggering the requirements of Rule 1.7(b). The plaintiffs' Complaint alleges, inter alia, that Big Laurel wrongfully used assets and income owned by JASMER and that Big Laurel intentionally interfered with the possession and ownership of property belonging to JASMER. The plaintiffs allege further that Big Laurel's actions constitute a continuing civil conspiracy against JASMER. More specifically, the plaintiffs claim that Big Laurel is disproportionately profiting from JASMER at JASMER's expense because JASMER is bound to a decades-long lease through which Big Laurel can use JASMER's properties for nominal consideration.

9

The court finds such allegations present a significant risk that Counsel's representation of JASMER and Big Laurel will be materially limited by Counsel's responsibilities and ethical obligations to both clients. Nonetheless, Rules 1.7 and 1.13 permit Counsel to represent both entities despite the conflict if Counsel reasonably believes that it can provide competent and diligent representation to each affected client and obtains informed consent, confirmed in writing, from each affected client. The court need not address in this case whether Counsel's belief that it can provide competent and diligent representation to both JASMER and Big Laurel is reasonable, as the court finds that Counsel has again failed to properly obtain JASMER's informed consent to the conflict. Accordingly, disqualification is required.

As stated above, Comment 18 to Rule 1.7 emphasizes that informed consent "requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client." Comment 18 explains further that "[w]hen representation of multiple clients in a single matter is undertaken, the information *must* include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved." (emphasis added).

Despite the defendants' contention that JASMER provided informed, written consent to the conflict with Big Laurel in its engagement agreement, the court finds, after an in camera review, that the engagement agreement contains virtually none of

10

the information required by the Rules of Professional Conduct. With respect to the conflict with Big Laurel, JASMER's engagement agreement merely states that a conflict may arise from Counsel's joint representation. Beyond this statement, the agreement provides no information regarding the conflict with Big Laurel, except that Counsel will require Big Laurel—notably, not JASMER—to waive the conflict. The engagement agreement also fails to inform JASMER of any implications of the joint representation. For this reason, the court cannot find that JASMER provided informed consent to the conflict with Big Laurel in its engagement agreement. Nor does any other evidence in the record suggest that Counsel properly obtained JASMER's informed, written consent to the conflict with Big Laurel.

Moreover, as with the conflict between JASMER and the Board Members, the conflict between JASMER and Big Laurel was apparent from the allegations in the plaintiffs' Complaint. As such, Rule 1.7 required Counsel to obtain JASMER's informed consent from the outset of the joint representation. Counsel's attempt to obtain JASMER's consent at a future special meeting is futile: Under Rule 1.7, Counsel cannot obtain JASMER's consent to the conflict with Big Laurel at a board meeting months after the conflict came into existence (or months after Counsel filed pleadings and documents on the defendants' behalf without having first obtained JASMER's consent).

Because Counsel failed to obtain JASMER's informed, written consent to the joint representation of Big Laurel, Counsel cannot represent either JASMER or Big

11

Laurel, regardless of whether Big Laurel appropriately consented to the conflict. *See* W. Va. R. Prof'l Conduct 1.7(b)(4) (requiring "*each* affected client" to give informed consent, confirmed in writing for a lawyer to represent a client notwithstanding a concurrent conflict of interest) (emphasis added). Counsel's violation of the Rules of Professional Conduct requires disqualification.

## IV. Conclusion

The court is aware that motions to disqualify counsel should be approached with caution because of their potential for harassment. The purposes of the West Virginia Rules of Professional Conduct "can be subverted when they are invoked by opposing parties as procedural weapons." *State ex rel. Verizon West Virginia, Inc. v. Matish*, 740 S.E.2d 84, 99 (W. Va. 2013). Nevertheless, Counsel's failure in this case to comply with the West Virginia Rules of Professional Conduct results in their disqualification.

The Motion to Disqualify Defendants' Counsel [ECF No. 21] is **GRANTED**, and the law firm of Stanley & Schmitt is disqualified from any and all further representation of the defendants in this case.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: October 26, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE