# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

MICHAEL FANNING, et al.,

        Plaintiffs,

v.                                                            CIVIL ACTION NO. 2:18-cv-01183

THE JOHN A. SHEPPARD MEMORIAL
ECOLOGICAL RESERVATION, INC., et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before this court are two Motions to Dismiss the derivative claims set forth in plaintiffs' Amended and Verified Complaint ("Amended Complaint"), [ECF No. 124], filed by defendants: Nancy Adams, Levern Collins, Tonda Koszycki, Molly Linehan, Monica Parsley, and the John A. Sheppard Memorial Ecological Reservation ("JASMER") [ECF No. 146]; and by defendants: Ian Noyes, Lydia Noyes, and Gretchen Shaffer [ECF No. 148]. Additionally, pending before this court is a Motion for Judgment on the Pleadings filed by defendant Big Laurel Learning Center, Inc. ("BLLC") [ECF No. 150]. Plaintiffs have responded to all three Motions [ECF No. 162] and the Motions are now ripe for adjudication. For the reasons that follow, the Motions to Dismiss are **GRANTED** and the Motion for Judgment on the Pleadings is **GRANTED**. Counts Three, Four, Five, and Seven of the Amended Complaint are dismissed with prejudice as to all defendants.

## I. Background

This matter involves claims brought by members of the board of directors of a nonprofit corporation against other purported members of that board. Plaintiffs' seven-count Amended Complaint [ECF No. 124] contains two categories of grievances. Counts One and Two sound in property law and arise from a dispute over plaintiff Fanning's right to occupy certain property. Counts Three through Seven assert numerous related claims arising from an alleged breach of duties and mismanagement by the members of the nonprofit's board. Specifically, Count III alleges that the board members breached their fiduciary duties; Count IV alleges constructive fraud and private inurement by certain board members; Count V alleges conversion of property by certain board members; Count VI raises a challenge to the legitimacy of the board members; and Count VII alleges a civil conspiracy among the board members for ill-described misconduct.

The Amended Complaint alleges as follows: defendant JASMER is a West Virginia nonprofit corporation. Am. Compl. ¶ 11. Since its formation, it has existed to carry out exclusively secular purposes, as stated in its articles of incorporation. *Id.* ¶¶ 28–31. In or about 1988, defendant BLLC began operating—and continues to operate—the Big Laurel Learning Center on JASMER's property in a manner inconsistent with JASMER's controlling conditions. *Id.* ¶¶ 45–48. Allegedly, BLLC fails to conduct a free school for students in a non-sectarian manner. *Id.* Instead, BLLC recruits volunteers and staff members who are associated with the Roman Catholic Church to run various faith-based programs on JASMER's property. *Id.* ¶¶ 48–49.

The Amended Complaint alleges that defendant board members breached their fiduciary and other duties to JASMER by approving a 2018 leasehold conveyance between BLLC and JASMER and by otherwise authorizing actions that resulted in a misuse or waste of JASMER's

2

corporate assets. *Id.* ¶¶ 108–113. Plaintiffs state that JASMER received consideration of only $1.00 for the lease agreement with BLLC, which grants BLLC the exclusive right and possession of JASMER's property for up to 75 years to continue to carry out various faith-based programs and activities. *Id.* ¶ 55–56. Plaintiffs contend that this "onerous" lease requires JASMER to obtain BLLC's permission to alter its corporate purposes and has otherwise caused JASMER substantial injuries. *Id.* ¶ 55–58, 116. Plaintiffs aver that the board members have authorized *ultra vires* corporate acts by approving the 2018 lease. *Id.* ¶¶ 108–10.

Plaintiffs also allege that the defendant board members improperly diverted JASMER's assets for private benefit. *Id.* ¶¶ 63–64. Plaintiffs state that "JASMER's tax exempt status under federal law has been potentially jeopardized . . . since such Defendants have allowed the net earnings of JASMER to inure to their own benefit and/or to the benefit of other private individuals." *Id.* ¶ 127. In addition, plaintiffs allege certain board members unlawfully converted JASMER's property and caused JASMER to sustain substantial damages by "willfully and maliciously dispos[ing] of encyclopedias owned by JASMER." *Id.* ¶ 135. Lastly, plaintiffs contend that the board members committed a civil conspiracy based on the aforementioned actions. *Id.* ¶¶ 146–48.

Defendants in this matter move for dismissal of Counts Three, Four, Five, and Seven of the Amended Complaint—plaintiffs' derivative claims—on several grounds, including a failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). At issue in the Motions to Dismiss is whether West Virginia law authorizes plaintiffs' derivative claims in the aforesaid counts. Defendants contend that plaintiffs' claims are not challenges to the corporation's "power to act" and therefore are not authorized by West Virginia law. While

3

plaintiffs counter that their claims do challenge the corporation's power to act, they argue that their derivative claims are permitted under West Virginia law even if they do *not* challenge an ultra vires act by the corporation.

On May 10, 2019, this court certified to the West Virginia Supreme Court of Appeals, the following novel question: "other than as expressly authorized by West Virginia Code § 31E-3-304(b)(2), does West Virginia law authorize derivative actions for state law claims brought on behalf of West Virginia nonprofit corporations?" [ECF No. 181]. On November 19, 2019, the West Virginia Supreme Court of Appeals delivered its opinion answering the certified question in the negative, finding that the "Legislature intended to preclude such derivative suits on behalf of nonprofit corporations." Copy of Certified Question Answered 12 [ECF No. 189]. West Virginia Code § 31E-3-304(b)(2) permits a member of a nonprofit corporation's board of directors to file an ultra vires derivate suit against another member of the board of directors to challenge the validity of an action by the corporation. Therefore, the main issue remaining in this case is whether Counts III, IV, V and VII of the Amended Complaint challenge ultra vires acts as defined in West Virginia Code § 31E-3-304(b)(2).

In the alternative, defendants request dismissal of Counts III, IV, V and VII, for failure to plead with particularly under Federal Rule of Civil Procedure 9(b) and failure to adhere to the heightened pleading requirements under Federal Rule of Civil Procedure Rule 23.1. Defendants additionally request dismissal of Count VII because plaintiffs have not correctly plead, the underlying tort on which the conspiracy can be based.

II. **Legal Standard**

In its Motion for Judgment on the Pleadings brought pursuant to Federal Rule of Civil

Procedure 12(c), BLLC incorporates the grounds and arguments made by the other defendants in their respective Motions to Dismiss. Def.'s Mot. for J. on the Pleadings 1 [ECF No. 150]. I therefore construe BLLC's Motion as a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted. In doing so, I apply the same standard as applied to a Rule 12(b)(6) motion. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Therefore, the same legal standard applies to BLLC's Motion for Judgment on the Pleadings as to the other defendants' Motions to Dismiss.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the Complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss under Rule 12(b)(6), plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the Complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the

5

claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a Complaint is to be construed liberally so as to do substantial justice." *Id.*

### III. Discussion

Other than expressly authorized in West Virginia Code §31E-3-304(b)(2) ("Section 304"), West Virginia state law does not authorize derivative actions for state law claims brought on behalf of West Virginia nonprofit corporations. Copy of Certified Question Answered 12 [ECF No. 189]. Section 304, entitled "Ultra Vires," provides that "a corporation's power to act may be challenged. . . in a proceeding by the corporation, directly, [or] derivatively. . . ." W. Va. Code § 831E-3-304(b)(2). In its opinion answering the certified question posed by this court, the West Virginia Supreme Court of Appeals instructed that Section 304 should be interpreted narrowly—finding that "the Legislature clearly drafted the Nonprofit Corporation Act with the goal of precluding most derivative claims." Copy of Certified Question Answered 10 [ECF No. 189].

"The term *ultra vires* is most commonly used to refer to acts that are beyond the scope of a corporation's purposes, as set forth in their articles of incorporation or bylaws. However, the term also has a broader meaning, implicating all actions that are 'performed without any authority to act on the subject.'" *See Parramore v. Tru-Pak Moving Sys.*, 286 F. Supp. 2d 643, 650 (M.D.N.C 2003) (quoting Black's Law Dictionary 1522 (6th ed. 1990)). Plaintiffs use this definition to argue that because Count III, IV, V, and VI arise out of misconduct and mismanagement—which obviously are beyond the corporate purpose of JASMER—those claims must qualify as challenges to ultra vires actions under Section 304.

Under plaintiffs' interpretation of Section 304, the exception would swallow the rule. The statute provides an exception to West Virginia's general disallowance of derivative suits in the

6

non-profit context. It creates standing to challenge the validity of corporate actions through a derivative suit. This cause of action is the exclusive vehicle for a derivative suit brought on behalf of a non-profit in West Virginia. Section 304 does not provide for a derivative action challenging a director's power to act. Plaintiffs' understanding would allow any wrongful act by a director to trigger the statutory exception because plaintiffs could characterize the act as done "without authority." Expanding Section 304 to cover derivative suits on behalf of non-profits for director mismanagement or misconduct simply because that conduct *results* in ultra vires corporate acts would distort the meaning of the statute.

None of the counts challenged by the Motions to Dismiss constitute causes of action to contest particular acts by the nonprofit corporation. The causes of action do not implicate the nonprofit's purpose. Count III raises a Breach of Fiduciary Duties claim, alleging that board members and officers of JASMER "failed to act in good faith and in the best interests of Defendant JAMSER" and "engaged in fraudulent, dishonest, and other wrongful conduct." Amend. Compl. ¶¶ 104, 105. Count IV raises a claim for Constructive Fraud and Private Inurement, alleging that directors and officers of JASMER took "undue advantage of and abused their positions of loyalty, trust and confidence in order to privately benefit themselves or others." *Id.* at ¶¶ 125. Count V raises a claim for Conversion of Property, alleging "[d]efendants BLLC, Ian Noyes and Lydia Noyes, have intentionally and significantly interfered with the possession and ownership of property belonging to JASMER." *Id.* at ¶ 133. Count VII raises a claim of Civil Conspiracy, alleging that defendants BLLC, Adams, Collins, Koszycki, Linehan, Noyes, Parsley, and Shaffer "conspired to engage in various concerted efforts in order to commit and carry out certain unlawful acts…." Although these counts certainly challenge directors' and officers' individual misconduct,

which falls outside the scope of the corporate purpose of JASMER, none of the counts constitute causes of action that seek relief from a particular act undertaken by JASMER for which it lacked the power to commit.

IV.     **Conclusion**

The Court **GRANTS** the Motions to Dismiss [ECF Nos. 146, 148] and the Motion for Judgment on the Pleadings [ECF No. 150]. Counts III, IV, V, and VII are thus **DISMISSED with prejudice**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    February 6, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE